<u>**DECIDED JULY 26, 2013**</u>

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| STATE OF TEXAS, ET AL.,<br><br>        Petitioners,<br><br>  v.<br><br>UNITED STATES<br>ENVIRONMENTAL<br>PROTECTION AGENCY,<br><br>        Respondent. | Case No. 10-1425<br>(Consolidated with 11-1062, 11-1128, 11-1247, 11-1249, 11-1250) |
| UTILITY AIR REGULATORY GROUP, ET AL.,<br><br>        Petitioners,<br><br>  v.<br><br>UNITED STATES<br>ENVIRONMENTAL<br>PROTECTION AGENCY,<br><br>        Respondent. | Case No. 11-1037<br>(Consolidated with 11-1038, 11-1039, 11-1041, 11-1059, 11-1106, 11-1063, 11-1075, 11-1076, 11-1077, 11-1078, 11-1287, 11-1288, 11-1289, 11-1290, 11-1291, 11-1292, 11-1293) |

**RESPONSE IN OPPOSITION OF RESPONDENT-INTERVENORS STATE OF CONNECTICUT, CONSERVATION LAW FOUNDATION, ENVIRONMENTAL DEFENSE FUND, NATURAL RESOURCES DEFENSE COUNCIL, AND SIERRA CLUB TO PETITIONS FOR REHEARING AND REHEARING *EN BANC***

Respondent-Intervenors the State of Connecticut, Conservation Law Foundation, Environmental Defense Fund, Natural Resources Defense Council, and the Sierra Club respectfully submit this consolidated response to the petition for rehearing filed by the State of Wyoming, *et al.*, and the petition for panel rehearing or rehearing *en banc* filed by the SIP/FIP Advocacy Group.[1]

The petitions should be denied. They rest on mischaracterizations of the Supreme Court's decision in *Utility Air Regulatory Group v. EPA*, 134 S. Ct. 2427 (2014) (*UARG*). The Court's *UARG* decision does not address or call into question this Court's conclusions that (1) section 165 of the Clean Air Act (CAA or Act) applies directly to sources, without regard to whether those requirements have been incorporated into a State Implementation Plan (SIP), and as a result, (2) Petitioners lack Article III standing to challenge actions taken by the Environmental Protection Agency (EPA) to enable sources to obtain required Prevention of Significant Deterioration (PSD) permits for greenhouse gas emissions absent state permitting authority. Petitioners fail to explain how any of them has Article III standing in this case, given that, if anything, their purported injuries are even more remote after *UARG* than before.

---

[1] Conservation Law Foundation, Environmental Defense Fund, Natural Resources Defense Council, and Sierra Club are Respondent-Intervenors Nos. 10-1425, *et al.*, and those four organizations and the State of Connecticut are Respondent-Intervenors in Nos. 11-1037, *et al*.

1

## BACKGROUND

In response to the Supreme Court's decision in *Massachusetts v. EPA*, 549 U.S. 497 (2007), EPA took several actions to address greenhouse gas pollution from mobile and stationary sources. *See* 74 Fed. Reg. 66,496 (Dec. 15, 2009) (Endangerment Finding), 75 Fed. Reg. 25,324 (May 7, 2010) (Tailpipe Rule), 75 Fed. Reg. 17,004 (Apr. 2, 2010) (Timing Decision), 75 Fed. Reg. 31,514 (June 3, 2010) (Tailoring Rule). In *Coalition for Responsible Regulation, Inc. v. EPA*, 684 F.3d 102 (D.C. Cir. 2012) (*Coalition*), this Court either denied or dismissed all challenges to those actions.

EPA took several additional actions addressing the application of Clean Air Act stationary source permitting programs, including the PSD Program, 42 U.S.C. §§ 7471–79, to sources of greenhouse gases: issuance of a determination that thirteen states lacked authority under their SIPs to issue permits addressing greenhouse gas emissions, 75 Fed. Reg. 53,892 (Sept. 2, 2010) (SIP Call); a federal implementation plan (FIP) to provide necessary authority in certain of those states, 75 Fed. Reg. 82,246 (Dec. 30, 2010); and a separate action to ensure adequate permitting authority in Texas, which had declined to develop a state program, 76 Fed. Reg. 25,178 (May 3, 2011) (collectively the "SIP and FIP Rules").

2

In these cases, this Court dismissed State and Industry Petitioners' challenges to the SIP and FIP Rules on the grounds that Petitioners lacked standing. *Texas v. EPA*, 726 F.3d 180, 199 (D.C. Cir. 2013). This Court reasoned that the PSD permit requirements in section 165(a) applied directly to sources and did not require federal implementing regulations or approved SIPs in order to have legal effect. *Id.* at 188–90. The effect of the SIP and FIP Rules was to give states authority they needed to issue greenhouse gas permits but otherwise lacked, and to enable sources to obtain these statutorily required permits. Accordingly, this Court concluded the Rules did not cause Petitioners the kind of concrete and redressable injury that is necessary to establish Article III standing. *Id.* at 198–99.[2]

After this Court's decision in the instant cases, the Supreme Court issued its ruling in *UARG* affirming in part and reversing in part this Court's holdings in *Coalition* concerning the application of the Act's stationary source permitting programs to greenhouse gases. The Court held (1) that the section 169(1) definition of "major emitting facilities" cannot be read to include those sources that are major for the composite pollutant "greenhouse gases" alone, 134 S. Ct. at 2439–46, and (2) that the "best available control technology" (BACT) requirement in section

---

[2] Since 2011, all states other than Arizona have submitted SIP revisions and now administer their PSD programs with respect to greenhouse gases. *E.g.*, 78 Fed. Reg. 69,998 (Nov. 22, 2013) (final approval of Wyoming SIP revisions); 78 Fed. Reg. 19,596 (Apr. 2, 2013) (final approval of Arkansas SIP revisions); 76 Fed. Reg. 26,933 (May 10, 2011) (final approval of Connecticut SIP revisions).

3

165(a)(4) applies to the greenhouse gas emissions of "anyway" sources, *i.e.*, those sources subject to the PSD permitting program by virtue of their emissions of other pollutants. *Id*. at 2447–49. The Court summarized its two holdings as follows:

> We hold that EPA exceeded its statutory authority when it interpreted the Clean Air Act to require PSD * * * permitting for stationary sources based on their greenhouse-gas emissions. Specifically, the Agency may not treat greenhouse gases as a pollutant for purposes of defining a "major emitting facility" (or a "modification" thereof) in the PSD context *.*.*. To the extent its regulations purport to do so, they are invalid. EPA may, however, continue to treat greenhouse gases as a "pollutant subject to regulation under this chapter" for purposes of requiring BACT for "anyway" sources.

*Id*. at 2449.[3]

On September 22, 2014, Petitioners requested panel rehearing and rehearing *en banc* of this Court's decision, claiming that this Court's holding is in "direct conflict" with the Supreme Court's decision in *UARG*. SIP/FIP Pet. 1.

## ARGUMENT

### I. The Supreme Court's Holdings in *UARG* Do Not Cure the Article III Standing Defects Here

The *UARG* Court's ruling that greenhouse gases are not an "air pollutant" for purposes of the PSD source definition in section 169(1), and that the statute does not subject sources to the obligation to obtain a PSD permit based solely on their greenhouse gas emissions, removes the legal basis for the EPA's effort in the

---

[3] The ellipses here remove references to the Title V program, which was also at issue in *UARG* but is not at issue here.

4

Tailoring Rule to exempt smaller sources from permitting obligations. *UARG* holds that the statutory permit obligation from which the Tailoring Rule sought to exempt smaller sources did not exist in the first place.

EPA has taken prompt action to effectuate the Supreme Court's ruling. In administrative guidance issued shortly after the *UARG* decision, EPA announced that it would not enforce provisions of the Tailoring Rule premised on its former interpretation that greenhouse gas emissions alone could subject sources to the obligation to obtain a PSD permit.[4] And in a motion to govern further proceedings filed in the remanded *Coalition* cases on October 21, 2014, EPA has requested that the *Coalition* panel "vacate in part and remand in part those portions of the Historic PSD Regulations and regulations adopted in the Tailoring Rule that treated greenhouse gases as a pollutant for purposes of defining a 'major emitting facility' * * * under the PSD permitting program[], as well as the related provisions of the Tailoring Rule that specified how these applicability requirements would be phased in for additional sources." EPA Mot. to Govern, Nos. 09-1322, *et al*., at 4 (Doc. 1518233).

---

[4] *See* Janet G. McCabe, Next Steps and Preliminary Views on the Application of Clean Air Act Permitting Programs to Greenhouse Gases Following the Supreme Court's Decision in *Utility Air Regulatory Group v. Environmental Protection Agency*, at 2 (July 24, 2014), *available at* www.epa.gov/nsr/documents/20140724memo.pdf.

5

At the same time, as EPA has explained in its submission in *Coalition*/*UARG*, the Supreme Court's decision provides no basis to block the continued application of BACT to "anyway" sources. *Id.* at 12–18. Continuing to apply the statutory BACT requirement to these sources effectuates the Supreme Court's second holding, and nothing in the *UARG* opinion suggests (let alone holds) that EPA or this Court may suspend the operation of the statutory BACT obligation. To the contrary, the Supreme Court concluded that the statutory text specifying that BACT applies to "each air pollutant subject to regulation under [the Act]" clearly embraces all regulated air pollutants, and " 'would not seem readily susceptible [of] misinterpretation,' " *id.* at 2448 (quoting *Alabama Power Co. v. Costle*, 636 F.2d 323, 404 (D.C. Cir. 1979)), and that nothing in the statute suggested "that the BACT provision can bear a narrowing construction," or could be read "to mean anything other than what it says." *Id.* at 2448; *accord id.* at 2455 (Breyer, J., dissenting in part and concurring in part) ("I agree with the Court's holding that * * * 'anyway sources' * * * must meet the 'best available control technology' requirement * * * with respect to greenhouse gas emissions").

The petitions for rehearing trumpet the transformative effect of the *UARG* decision, but they fail to establish that anything in *UARG* has undermined this Court's Article III standing holding. In the actions under review here, EPA determined that thirteen states' SIPs were invalid because those state plans did not

6

contain a mechanism for regulating greenhouse gases once they became subject to regulation under the Clean Air Act. Because *UARG* held that sources that are "major emitting facilit[ies]" due to their emissions of other pollutants are subject to the BACT requirement for their emission of greenhouse gases, no "major emitting facility" that emits greenhouse gases may lawfully be constructed unless it obtains a PSD permit applying BACT to these pollutants. Thus, EPA's actions to ensure greenhouse gas permitting authority were, and remain, necessary to allow sources in those states to lawfully undertake construction or modification.

Neither does the *UARG* Court's holding regarding the meaning of "any air pollutant" create jurisdiction, or provide cause for rehearing, in the instant cases. To the extent the SIP and FIP Rules were promulgated to ensure that states had in place the Tailoring Rule provisions *exempting* relatively small greenhouse gas emitters from the statutory permit requirement, they are of no practical consequence. *UARG* has established that a source cannot be a "major emitting facility" subject to the permitting regime solely by virtue of its greenhouse gas emissions. Thus, under the Court's decision, the class of sources that prompted EPA to promulgate the Tailoring Rule's system of regulatory exemptions is not covered by the statute. Accordingly, the Tailoring Rule's exemptions are now a regulatory vestige that (as EPA recognizes) are to be rescinded. Even as they await official rescission, provisions exempting sources from nonexistent statutory obligations do not cause any Article

7

III injury, and Petitioners, whose burden it is to establish standing, have not even sought to explain the nature of any such injury.

II. **The Supreme Court's *UARG* Decision Does Not Undermine this Court's Conclusion that Section 165(a) Imposes Legal Obligations Directly upon Sources Regardless of Whether the Obligations Have Been Incorporated into a SIP.**

This Court's determination that Petitioners lacked standing to challenge EPA's SIP and FIP Rules turned on its conclusion that section 165(a) is self-executing. *Texas*, 726 F.3d at 187; *see also id.* at 198 ("Counsel for industry petitioners conceded at oral argument that, if CAA § 165(a) was self-executing, his clients lacked Article III standing * * * ."). Petitioners now contend that the Supreme Court's decision in *UARG* "specifically rejected" that conclusion. SIP/FIP Pet. 5. However, *UARG* did not even address—let alone reject—this Court's determination that section 165(a) is self-executing—a matter of basic statutory architecture that has implications not just for greenhouse gases, but for all air pollutants regulated under the PSD program.

In these cases, this Court analyzed the mechanics of the PSD program in detail, concluding that the PSD requirements are self-executing, *i.e.*, they apply directly to sources and are not dependent on EPA adopting regulations that states then implement through SIPs. The Court rested this conclusion on the plain text of section 165—which prohibits construction absent a PSD permit that "*conform[s] to the requirements of this part*," 42 U.S.C. § 7475(a)(1)—as well as on its past

8

decisions concluding that section 165 applies directly to sources, *Texas*, 726 F.3d at 187–88 (*citing Citizens to Save Spencer County v. EPA*, 600 F.2d 844, 853 (D.C. Cir. 1979) ("[S]ection 165 by its terms explicitly and without qualification prohibits the construction of any major pollution emitting facility * * * unless the substantive requirements of that section have been met * * * ."); *Alabama Power Co.*, 636 F.2d at 406).

This Court explained that section 167's authorization for direct EPA enforcement of the PSD permitting provisions supports the conclusion that section 165(a) applies directly to sources and noted that the Supreme Court's decision in *Alaska Department of Environmental Conservation v. EPA*, 540 U.S. 461 (2004), further reinforced this understanding, 726 F.3d at 188–90. Finally, pointing to the structure of the Act, the Court concluded that "[w]here Congress intended air quality programs to apply solely through State-approved SIPs, Congress used explicit language that * * * contrasts with the language of Section 165." *Id.* at 189 (comparing section 165 to section 173(a)(1), 42 U.S.C. § 7503(a)(1), Part D nonattainment permitting provision).

As this Court observed, Petitioners "offer[ed] no alternative interpretation of the text of CAA § 165(a) or § 167," but instead invoked more general Clean Air Act "cooperative federalism" concepts. *Id*. at 190. Petitioners argued that two independent steps were required before PSD permitting requirements applied to

9

sources: first, that EPA adopt regulations implementing the PSD program (including requirements for newly-regulated pollutants), and second, that states incorporate those requirements into approved SIPs. Only after each of these steps had occurred, Petitioners argued, would sources have any obligation to comply with the requirements of section 165. Opening Br. of Non-State Petitioners, Nos. 11-1037, *et al.*, at 22 (Doc. 1377253).

Petitioners now claim that *UARG* rejected this Court's holding that section 165(a) is self-executing and endorsed their preferred understanding of the statute. *See* UARG/State Pet. 2 ("In *UARG*, the Supreme Court ruled that Section 165(a) is not self-executing."); *see also* SIP/FIP Pet. 6. But that is not a fair reading of the Supreme Court's opinion. The Court did not address the question of whether the statute applies directly to sources, or whether it must first be incorporated in a SIP or through federal implementing regulations; it nowhere cited "cooperative federalism" arguments or the role of SIPs in PSD enforcement. Nothing the Supreme Court said (and nothing it held) is inconsistent with this Court's ruling that the PSD requirements are self-executing.

Petitioners vaguely claim support for their position in the portion of the Court's opinion concluding that greenhouse gases are not "air pollutants" for purpose of the statutory definition of a "major emitting facility." UARG/State Pet. 13–14. But that holding does not address the question whether PSD applies directly

10

in the absence of an implementing plan. Nothing in *UARG* calls into question EPA's longstanding interpretation that the PSD statutory requirements apply by their own force to major emitters of pollutants that are properly subject to PSD. Indeed, the self-executing nature of the PSD requirements is a major element of the statutory design and an essential premise of this Court's foundational decisions in *Alabama Power* and *Spencer County*. That self-executing structure is manifest in the provisions setting out covered sources' permit obligations under section 165 and in the section 167 enforcement provisions, and it undergirds the entire PSD program with respect to all covered pollutants.[5] The Supreme Court would not have overturned it *sub silentio*.

What a statutory provision requires, and whether its requirements apply to covered entities in the absence of administrative implementing regulations, are distinct questions. The question in *UARG* was the substantive question of whether the PSD permitting obligations and the BACT requirement apply to sources of greenhouse gas emissions; the procedural question of how these substantive

---

[5] The phrasing of the statute leaves no doubt that Congress intended to prohibit construction of major emitting facilities whenever such construction would be inconsistent with *the statute*. Section 167 requires EPA to take action to prevent construction of a "major emitting facility which does not conform *to the requirements of this part*," *or* which is proposed to be constructed in any area "which is not subject to an implementation plan which *meets the requirements of this part*." 42 U.S.C. § 7477 (emphases added). Congress would not have used this phrasing had it intended to make the statutory PSD requirements contingent upon adoption of federal regulations or SIP provisions. *See* 726 F. 3d at 188.

11

requirements become applicable to sources was not before the Court. Indeed, until recently, at least some of the Petitioners recognized the clear difference between the substantive questions of statutory coverage at issue in *Coalition*/*UARG* and the essentially procedural question at issue in this case. In their 28(j) letter filed in the instant cases addressing the *Coalition* decision, Petitioner UARG asserted that the decision did "not address, much less resolve, the issues presented for review in the instant case, which concern *how* and *when* states that administer their own PSD programs * * * are to incorporate * * * newly regulated greenhouse gases." Pet. UARG's Rule 28(j) Ltr., at 2 (July 24, 2012) (Doc. 1385312).

Petitioners also suggest that the Supreme Court's second holding—*upholding* EPA's application of the BACT requirement to the greenhouse gas emissions of "anyway" sources, 134 S. Ct. at 2447–49—somehow undermines this Court's interpretation of section 165 as self-executing. Petitioners again mischaracterize the Supreme Court's decision. The Court concluded that the statutory text specifying that BACT apply to "each air pollutant subject to regulation under [the Act]" embraces all regulated air pollutants, and " 'would not seem readily susceptible [of] misinterpretation,' " *id*. at 2448 (quoting *Alabama Power Co.*, 636 F.2d at 404), nor "a narrowing construction," *id*. at 2448.[6]

---

[6] Petitioners (UARG/State Pet. 12-13) suggest that the *UARG* Court upheld EPA's interpretation of the BACT requirement to apply to greenhouse gases under "*Chevron* Step Two," and that such an analysis means the Court ruled that the BACT

12

As with its first holding, the Court's conclusions with respect to BACT concern the *substantive reach* of the PSD provisions, not the method for implementing those requirements. Nothing in the opinion holds or suggests that EPA must adopt regulations before BACT can be applied, much less that the statutory obligation is without effect until incorporated in an EPA-approved SIP. Indeed, the Supreme Court's discussion disapproving EPA's effort to adjust the statutory tonnage thresholds that govern the "major emitting facility" definition via the Tailoring Rule unmistakably recognizes that the section 165(a) requirements are self-executing. The Court observed that the Tailoring Rule "purports to alter" the PSD "statutory permitting requirements" and "to establish with the force of law that otherwise-prohibited conduct will not violate the Act." 134 S. Ct. at 2445 (emphasis omitted). The Court further explained (*id*.) that:

> This alteration of the statutory requirements was crucial to EPA's "tailoring" efforts. Without it, small entities with the potential to emit

---

provision is not self-executing. Petitioners are wrong on both points. The *UARG* Court's discussion makes clear that the Court found the plain language of the BACT provision determinative. *See id*. at 2448 (finding no indication "that the BACT provision can bear a narrowing construction" that would exclude greenhouse gases or that it could "mean anything other than what it says"). More importantly, whether the Court's BACT holding is properly characterized as falling under *Chevron* Step 1 or Step 2 has nothing to do with whether the PSD provisions are self-executing. Many statutory provisions are ambiguous but self-executing. *E.g.*, 15 U.S.C. § 1 (Sherman Act prohibition declaring unlawful "[e]very contract * * * in restraint of trade"). Freedom of speech, unreasonable searches, due process of law, and cruel and unusual punishments are, in important respects, ambiguous, yet "[t]he first eight Amendments to the Constitution set forth self-executing prohibitions on governmental action," *City of Boerne v. Flores*, 521 U.S. 507, 524 (1997).

13

greenhouse gases in amounts exceeding the statutory thresholds would have remained subject to citizen suits—authorized by the Act—to enjoin their construction, modification, or operation * * * .

In the *Coalition* case on remand, Petitioners have argued that, to be faithful to the *UARG* decision, the panel must enjoin the operation of the statutory BACT requirement until EPA completes some further rulemakings that they claim the *UARG* mandated. State/Industry Joint Mot. to Govern, Nos. 09-1322, *et al.*, at 6–8 (Docs. 1518242, 1518254). Those arguments are altogether meritless, and respondent-intervenors will urge the *Coalition* panel to reject them. In any event, such arguments provide no basis for reexamination of the Court's decision here that Petitioners lacked standing to challenge the SIP and FIP Rules.

### III. Nothing in *UARG* Calls for Rehearing Concerning 40 C.F.R. § 51.166

In its July 2013 decision in the instant cases, this Court held that 40 C.F.R. § 51.166(a)(6) did not apply to the SIP revisions here. *See* 726 F. 3d at 194–96. To the extent some Petitioners (UARG/State Pet. 14) seek to reassert a claim based on that regulation, they again present no valid basis for rehearing. As demonstrated above, the Petitioners' claim that the Supreme Court overturned this Court's ruling that the PSD statute applies directly to sources is simply wrong. Nothing in *UARG* addressed 40 C.F.R. § 51.166(a)(6) or passed on EPA's interpretation of that regulation. And while Petitioners err when they assert that EPA must undertake "new rulemaking" before the BACT requirement can continue to apply to emissions

14

of greenhouse gases from "anyway" sources (*see* UARG/State Pet. 12 n.8) it is plain that the alleged implications of 40 C.F.R. § 51.166 for any *future* rulemakings are not before the Court in these cases, and are no basis for rehearing.

## CONCLUSION

The petitions should be denied.

Respectfully submitted,

Kimberly P. Massicotte
Scott N. Koschwitz
Assistant Attorneys General
55 Elm Street
P.O. Box 120
Hartford, CT 06106
(860) 808-5250
Scott.Koschwitz@ct.gov

*Attorneys for State of Connecticut*

Joanne Spalding
Nathan Matthews
Sierra Club
85 2nd Street
San Francisco, CA 94105
(415) 977-5725

*Attorneys for Sierra Club*

Ann Brewster Weeks
Clean Air Task Force
18 Tremont Street, Suite 530
Boston, MA 02108
(617) 624-0234

*Attorneys for Conservation Law Foundation*

*/s/ Sean H. Donahue*
Sean H. Donahue
Donahue & Goldberg, LLP
1130 Connecticut Avenue, N.W.,
Suite 950
Washington, DC 20036
(202) 277-7085
sean@donahuegoldberg.com

Vickie L. Patton
Peter Zalzal
Environmental Defense Fund
2060 Broadway, Suite 300
Boulder, CO 80302
(303) 447-7215

*Attorneys for Environmental Defense Fund*

David Doniger
Natural Resources Defense Council
1152 15th Street, N.W.,
Suite 300
Washington, DC 20005
(202) 289-6868

*Attorney for NRDC*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing response in Nos. 10-1425, *et al.*, and Nos. 11-1037, *et al.*, was served, this 4th day of November, 2014, on all registered counsel, through the Court's CM/ECF system.

>*/s/ Sean H. Donahue*
>Sean H. Donahue
>Donahue & Goldberg, LLP
>1130 Connecticut Avenue, N.W.,
>Suite 950
>Washington, DC 20036
>(202) 277-7085
>sean@donahuegoldberg.com